Halfpenny *versus* Bell, to the use of Apsley *et al.*

1. Bell sued Halfpenny on a single bill; at the trial Halfpenny offered to set off damages arising from a breach of a sealed contract between them, entirely disconnected with the note in suit, which offer was refused; *Held* (reversing the court below), that such damages could properly be set off.

2. Matters *ex contractu* arising out of a different transaction from the one in suit may be proved by way of set off.

May 17th 1876.  Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, and WOODWARD, JJ.  WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Blair county*: Of May Term 1876, No. 3.

Debt by B. F. Bell, to use, &c., against John Halfpenny, on a single bill, dated October 22d 1873, payable one day after date. The defendant pleaded "Never indebted," and "Payment, with leave," &c.

At the trial, after the bill had been placed in evidence by the plaintiff, the defendant offered the following agreement, to be followed by evidence that a large amount of damages had been done by plaintiff to defendant's land, by reason of floating logs down the stream, mentioned in the agreement, for the purpose of showing a set off to an amount equal to, or greater than, the note in suit.

" *This indenture*, made the 13th day of June, A. D., One Thousand Eight Hundred and Sixty-eight, between John Halfpenny and Daniel Nole, the firm of Halfpenny & Nole, of the Township of Antis, County of Blair, and State of Pennsylvania, of the one part, and Benjamin F. Bell, of the Township, County and State aforesaid, of the other part; WHEREAS, the said Benjamin F. Bell is seized in fee of and in a certain tract, piece or parcel of land, situated in said Township of Antis, and having thereon erected a saw mill, at the mouth of a certain run or stream of water, known as Laurel Run, and whereas, the said Benjamin F. Bell is also seized in fee of and in certain other tracts of timber land, situated on the headwaters of said Laurel Run, the timber from which said tracts of land he is desirous of floating or driving down the said Laurel run to the aforesaid saw mill, and whereas the said firm of Halfpenny & Nole is seized of and in fee of a certain intermediate tract of land on said Laurel Run: Now this indenture witnesseth that the said Halfpenny & Nole for divers good causes and considerations, and more especially for and in consideration of One Dollar to them in hand, paid by the said Benjamin F. Bell and his heirs and assigns the full and uninterrupted use, liberty and privileges of, and passage via, and along said Laurel Run for the purpose of clearing said run or stream of water of brush, logs, stones, drift, or other obstructions of any kind whatsoever, and also for the purpose of floating or driving timber as aforesaid from said tracts of timber land to said saw mill together with ingress, egress, and regress to and for the said Benjamin F. Bell his heirs and

[Halfpenny v. Bell.]

assigns and his or their workmen and employees at all times and seasons during the term hereinafter mentioned through the land of the said Halfpenny & Nole along said Laurel run and its banks to and for the purpose hereinbefore mentioned to have and to hold all and singular the privileges aforesaid, to him the said Benjamin F. Bell, his heirs and assigns to the only proper use and behoof of him, the said Benjamin F. Bell, his heirs and assigns for and during the term of fifteen years in common with them, the said Halfpenny & Nole, and their heirs and assigns.   Provided that the said floating or driving of logs shall not at any time be allowed to work, or cause injury or detriment to said Halfpenny & Nole and that any accidental injury shall be promptly repaired by the said Benjamin F. Bell; injury from floods or other natural causes excepted.   In witness whereof the said parties have hereunto set their hands and seal the year and day first above written.

Witness present               JOHN HALFPENNY, [L. S.]
(Signed,) W. H. EBAUGH.       BENJAMIN F. BELL, [L. S.]

The offer was objected to, "first, because the offer is to prove unliquidated damages; and, secondly, because the offer is to prove a set-off arising out of a distinct and separate cause of action, not relating to the subject-matter of the present cause."

No objection appears to have been taken to the mention in the agreement of one Nole, who, however, does not seem to have signed the agreement.

These objections were sustained, and the jury were instructed to find for the plaintiff, which they did.   After judgment, the defendant took this writ of error and assigned for error the refusal of the court to admit the evidence contained in the defendant's offer.

*S. Calvin,* for plaintiff in error, cited Hunt v. Gilmore, 9 P. F. Smith 450.

*H. W. Baldridge,* for defendant in error.—The defendant's right of action arose *quasi ex delicto,* and out of a transaction altogether distinct from the debt sought to be recovered: Gogel v. Jacoby, 5 S. & R. 122; Hood v. Kean, 11 Id. 295.   Rights of action arising in separate and distinct covenants, under seal, cannot be set off against each other: McQuaide *et al.* v. Stewart *et al.,* 12 Wright 198. The defendant sought to set off damages alleged to be due to him for floating logs through land of which it appeared that he was a tenant in common with one Nole.   Set-off can be allowed only where parties have a mutual right to sue each other: Henderson v. Lewis, 9 S. & R. 379; Everson v. Fry, 22 P. F. Smith 326.

Mr. Justice PAXSON delivered the opinion of the court, May 29th 1877.

1 NORRIS—9

[Halfpenny *v.* Bell.]

It was held in Hunt *v.* Gilmore, 9 P. F. Smith 450, that unliquidated damages arising *ex contractu* from any bargain, may be set off under the Defalcation Act of 1705, 1 Sm. Laws 49, whenever they are capable of liquidation by any known legal standard. Tested by this rule, the offer of evidence embraced in the plaintiff's assignment of error ought to have been received. That the damages were unliquidated, and that the offer was to prove a set-off arising out of a distinct and separate cause of action, is not material. There was no difficulty under the well-settled rules of law in liquidating the damages; that they arose out of a separate cause of action constitutes no objection. Matters growing out of the same transaction, as a general rule, are the subjects of an equitable defence; our Defalcation Act allows other and totally distinct transactions to be proved by way of set-off, in order to avoid circuity of action. We see no reason why the defendant below should not set off as a defence to the note in suit, the damages, if any, sustained by him under the agreement of 13th of June 1868. The objection that such damages arise from tortious acts, is not tenable. The agreement, although inartificially drawn, is a covenant to repair. Under it Bell, the plaintiff below, acquired the right to float his logs down the stream through the defendant's property, subject to the condition of promptly repairing any accidental injury occasioned thereby. It does not necessarily follow that the damages which the defendant claimed to set off, arose from any tortious acts. If they did, we concede, under all the cases, they could not be allowed.

Judgment reversed, and a *venire facias de novo* awarded.