1916.]    Opinion of Court below—Opinion of the Court.

There was ample evidence to support any one of these three views of the case.

The case was entirely for the jury, and we have reviewed the manner of its submission to them, and have not been pointed to any error of law in the manner of its submission.

Verdict and judgment for defendant.    Plaintiffs appealed.

*Errors assigned* were various portions of the charge.

*V. Gilpin Robinson,* with him *John A. Poulson,* for appellants.

*Joseph H. Hinkson,* with him *J. DeHaven Ledward,* for appellee.

PER CURIAM, March 13, 1916:

The judgment is affirmed on the opinion of the court below refusing the motion for a new trial.

---

## Marshall *v.* Brainerd, Appellant.

*Contracts—Bonds—Suretyship—Officer of corporation—Increase in duties—Release of surety—Set-off.*

1. In an action by a corporation against the surety on the official bond of its treasurer, to recover the amount of a misappropriation by the treasurer of moneys belonging to the corporation, the surety cannot set off the amount of a debt owing to him by the obligee arising from an independent transaction; nor can the treasurer, who is joined as a party defendant, set off moneys alleged to be due him by the company as against his liability for misappropriated treasury moneys.

2. Permitting or requiring an employee or agent to perform other duties in addition to those in respect of which the security is given will not discharge the surety if the additional duties are not such as to prevent or hinder the faithful performance by the principal of those for which the bond is given.

Argued Feb. 9, 1916.   Appeal, No. 383, Jan. T., 1915, by defendants, from judgment of C. P. Chester Co., January Term, 1915, No. 45, on verdict for plaintiffs in case of T. Elwood Marshall and Charles G. Gawthrop, Receivers of Fibre Specialty Co., v. J. W. Brainerd, George W. Taft and Fred T. MacDonald, D. Duer Philips and James R. Miles, Executors of James M. Worrall, Deceased. Before MESTREZAT, POTTER, STEWART, FRAZER and WALLING, JJ.   Affirmed.

Assumpsit against the principal and sureties on a treasurer's official bond.

The facts appear in the following opinion by BROOMALL, J., specially sitting:

This suit is brought by the receivers of the Fibre Specialty Company against J. W. Brainerd, treasurer of said company, and George W. Taft and James M. Worrall, deceased, his sureties. The by-laws of the Fibre Specialty Company provide, inter alia, for the offices of the secretary, treasurer and general manager, with the condition that the secretary and treasurer may be one person. They provide that the president shall countersign all checks signed by the treasurer. As to the treasurer they provide as follows: "The treasurer shall receive all moneys and deposit them in banks to be designated by the board, and pay out the same only upon orders countersigned by the president. He shall give bond in the sum of five thousand dollars, with sureties to be approved by the board of directors at the expense of the company, conditioned for the faithful discharge of his duties. He shall make a clear statement in writing of the financial condition of the corporation to the board of directors for each annual meeting of the stockholders, and at such other times as the board may direct. He shall exhibit his annual statement, together with his accounts and all books, papers and vouchers relating to the same to the directors when required for their examination. He shall prepare a list of the stockholders au-

thorized to vote at any meeting for use at such meeting, and he shall turn over to his successor in office all moneys and vouchers in his hands or control belonging to the corporation."

As to the general manager, they provide as follows: "The general manager shall have supervision of the shops and such other duties as may be delegated to him by the board."

The defendant, J. W. Brainerd, was elected on September 9, 1903, secretary and treasurer of the company. On November 3, 1903, he gave to the company the bond in suit with George W. Taft and James M. Worrall as sureties in the sum of five thousand dollars, conditioned that "the said J. W. Brainerd, treasurer as aforesaid, shall faithfully discharge the duties pertaining to his said office according to law and the requirements of the by-laws of the said company, during his present term and during all the period of his occupancy of his said office by re-election or otherwise."

At the annual meeting on September 14, 1904, he was elected secretary, treasurer and general manager, and continued by annual re-election to occupy the said offices until the appointment of receivers for the said company on April 28, 1913. His salary as secretary and treasurer for the year ending in September, 1904, was twelve hundred dollars per annum, and for the years ending in September, 1905; September, 1906, and September, 1907, his salary as secretary, treasurer and general manager was fifteen hundred dollars per annum. For the years ending in September, 1908; September, 1909, and September, 1910, his salary for the same offices was two thousand dollars per annum. For the years ending September, 1911, and September, 1912, his salary for the same offices was twenty-five hundred dollars per annum. At the last annual meeting in September, 1912, his salary for the same offices was increased to twenty-six hundred dollars per annum.

The treasury moneys were kept in bank to the credit

of the Fibre Specialty Company, and an account thereof
was kept in the cash account in the books of the company.
The moneys in bank were subject to be withdrawn by
check of J. W. Brainerd, as treasurer, countersigned by
the president.

The contention of the plaintiffs upon the trial was that
there were moneys belonging to the company, which
ought to be in the hands of its treasurer, J. W. Brainerd,
and which would be in his hands had he not improperly
appropriated them to himself.  The amount of the
moneys thus alleged to have been misappropriated was
thirty-nine hundred and fifty-four dollars and fifty-two
cents.  The moneys thus abstracted were charged to his
individual account in the books of the company, and this
account was balanced by crediting to it fifteen hundred
dollars for salary during the years 1909, 1910 and 1911
in excess of the amount which he was entitled to receive;
also one thousand dollars for expenses, which it was al-
leged were disbursed by him, and which it was contended
he was not entitled to receive; also the sum of twelve
hundred and forty-one dollars and thirty-one cents
which he had drawn in the fraction of the year from
September, 1912, to the time of the appointment of the
receivers in April, 1913, in excess of what he was entitled
to receive, and the remainder was for moneys paid in set-
tlement of a personal bill of his own of sixty-seven dol-
lars and seventy-one cents, and also in payment of a bill
for cigars, alleged to be for the company, amounting to
one hundred and forty-five dollars and fifty cents.  The
jury disallowed the cigar bill, one hundred and forty-
five dollars and fifty cents, and rendered a verdict for
thirty-eight hundred and nine dollars and two cents.  If
he had not withdrawn from the treasury the over-pay-
ments for salary, to wit: fifteen hundred dollars and
twelve hundred and forty-one dollars and thirty-one
cents, and if he had not withdrawn from the treasury for
his expenses the sum of one thousand dollars, and if he
had not withdrawn from the treasury the bill which he

owed to another, which was paid by the company, amounting to sixty-seven dollars and seventy-one cents, there would have been in the treasury the amount for which the jury rendered a verdict, thirty-eight hundred and nine dollars and two cents. There was no precedent corporate authority for the payment of these moneys.

The defense to this claim was that these moneys were paid out in the usual course of business with the approval of the president, evidenced by his countersignment as to all except the expense item of one thousand dollars. This expense item was entered in the books under his direction as a journal entry to his credit and charged to expense account, and hence was not a withdrawal by check. The defense further was that as to all of these items with the exception of the overdraft of salary after September, 1912, to wit: twelve hundred and forty-one dollars and thirty-one cents, they received the approval of the company at each annual meeting by the audit of the books in which they were entered. The jury were instructed that if the company had ratified these payments, or any of them, and the evidence bearing upon such ratification being what took place at the annual meetings, the plaintiffs would not be entitled to recover payments thus ratified. This question the jury have found in favor of the plaintiffs.

The defendants now move for a new trial and for judgment n. o. v.

The first reason for a new trial challenges the action of the court in excluding as a defense an indebtedness of the company to George W. Taft, evidenced by a demand note of the company to him dated July 23, 1912, and owing to him at the time of the appointment of the receivers.

The bond in this case is a joint and several obligation. If nothing more appeared than simply an obligation of J. W. Brainerd to the company, for which Taft and Worrall were sureties, then it would be the right of the defendants to set off or defalk the indebtedness of the company to Taft, and this under the authority of Hibert

v. Lang, 165 Pa. 439, 442, upon the principle therein stated by MITCHELL, J., "although in general in order to support a set-off there must be cross demands between the same parties and in the same rights, such as would sustain mutual actions against each other, yet wherever there is the practicability of avoiding circuity of action and needless costs with safety and convenience to all parties, or where there is a special equity to be subserved and no equity of third parties to be injured, a set-off will be allowed upon equitable principles, though the case does not come within the language of the statute."

But the effect of allowing this set-off would be to enable the treasurer to pay the moneys of the company, which he has received as its treasurer, by a debt of the company to his surety. This the treasurer could not do. The undertaking of the treasurer is that the moneys of the company in his hands as treasurer shall be held at the order of the corporation, and without such order he cannot pay or appropriate them either to himself or others. There is an implied undertaking not to plead a set-off: Russell v. First Presbyterian Church of Pottsville, 65 Pa. 9; Tagg v. Bowman, 99 Pa. 376; ibid, 108 Pa. 273. This is the character of obligation for which Taft became security, and the same reasons apply to him as apply to the treasurer himself.

Moreover it appears that George W. Taft assigned this note on June 30, 1913, to Harry W. Chalfant. The plea of set-off was not entered until January 11, 1915. Without the consent of Mr. Chalfant, this note could not be used as a set-off.

The second reason for a new trial is, "The learned court erred, after having permitted the plaintiffs to surcharge the individual account of J. W. Brainerd on the Fibre Specialty Company's books with items alleged to have been wrongfully credited, thus showing an overdraft, in refusing to permit the defendants to show credits to which the said Brainerd was justly entitled in

said individual account which would have balanced said overdraft."

The foregoing somewhat confuses the situation. The plaintiffs claim was not for the amount owing on Brainerd's book account as such. It was for the amount of Brainerd's misappropriation of the moneys in the treasury. These misappropriated moneys were charged to Brainerd's book account from time to time as they were paid out. The attempt was made to get rid of these charges by crediting him with items to which he was not entitled. In this manner the credits became the measure of the misappropriation. Brainerd could not be permitted to credit himself with moneys which it is alleged the company owed him, as against his liability for misappropriated treasury moneys, for reasons already stated.

The third reason for a new trial is a complaint that the court did not affirm defendants first point to the effect that the election of J. W. Brainerd as general manager, as well as treasurer, per se relieved the sureties on his treasurer's bond; and the third reason is a complaint that the court did not submit to the jury to find as a matter of fact that the election of J. W. Brainerd as general manager, as well as treasurer, materially increased the risk and responsibility of the sureties and operated to relieve them. There was no evidence to submit to the jury upon which to base such a finding. The treasurer disbursed to himself the amount of money represented by the verdict. He attempted to repay a large part of it by an overcharge of salary as secretary, treasurer and general manager, and by a credit to himself of expenses as general manager. The office of general manager had no part in the wrongful disbursement. It only figured to the extent of one thousand dollars in an attempt to get relief from the wrongful disbursement. "It is generally held that permitting or requiring an employee or agent to perform other duties in addition to those in respect of which the security is given will not discharge

42      MARSHALL *v.* BRAINERD, Appellant.

the surety, if the additional duties are not such as to prevent or hinder the faithful performance by the principal of those for which the bond was given": Daly v. Old & Ferry, 28 L. R. Ann. (N. S.) 463, note. The change must be such as to interfere with or modify the duties for the faithful performance of which the sureties are bound: Shackamaxon Bank v. Yard, 150 Pa. 351. The mere fact of the imposition upon him of other and greater duties and responsibilities in no way interfering with or modifying those imposed by the original appointment will not discharge the surety: Harrisburg Savings & Loan Assn. v. U. S. Fidelity & Guaranty Co., 197 Pa. 177. In our case the general manager had nothing whatever to do with the payment of money by the treasurer. We are not impressed by these reasons.

What we have said and the authorities cited express our views also as to the remaining reason. We are not moved to disturb the verdict.

Verdict for plaintiffs for $3,809.02 and judgment thereon. Defendants appealed.

*Errors assigned* were in refusing plaintiffs motions for a new trial and judgment non obstante veredicto.

*Isabel Darlington,* with her *Thomas S. Butler,* for appellants.

*S. Duffield Mitchell,* for appellees.

PER CURIAM, March 13, 1916:
The judgment is affirmed on the opinion of the learned court below refusing the motions for a new trial and for judgment n. o. v.