## Middletown and Swatara Consolidated Water Company v. Middletown Borough.

*Practice—Pleading—Affidavit of defence—Municipalities—Judgment for want of a sufficient affidavit of defence—Set-off—Moneys paid by mistake—Plaintiff's reply—Questions of law—Practice Act of May 14, 1915, and Act of May 3, 1917.*

1. Since a municipality is not required to file an affidavit of defence under the Act of May 3, 1917, P. L. 149, amending the Practice Act of May 14, 1915, P. L. 483, judgment cannot be entered against it for want of a sufficient affidavit of defence where a municipality has filed an affidavit as a mere volunteer.

2. An action of *assumpsit* is the proper remedy for the recovery of money paid by mistake.

3. In an action of *assumpsit* by a water company seeking to recover upon a written contract for the rental of certain fire-plugs or hydrants, the municipality defendant may properly set up as a defence its claim of set-off for certain rentals theretofore paid, which it is alleged the company had no right to receive and retain.

4. Section 2 of the Practice Act of 1915 provides for a plaintiff's reply only in cases where a set-off or counter-claim is pleaded. It is not permissible, therefore, for the plaintiff in its reply to raise a question of law upon any part of the pleadings, except that part of the affidavit of defence of the defendant which alleges a set-off or counter-claim. As to all other matters of denial, the pleadings are at an end when the plaintiff's statement and the affidavit of defence thereto are filed.

Plaintiff's reply raising questions of law. C. P. Dauphin Co., Jan. T., 1921, No. 18.

*William H. Sponsler* (with him *Beidleman & Hull*), for plaintiff.

*John R. Geyer*, for defendant.

WICKERSHAM, J., Feb. 12, 1923.—The plaintiff in this case commenced an action of *assumpsit* to recover from the defendant, a municipal corporation, rent for forty-one water-plugs or hydrants from July 1, 1918, to Jan. 1, 1921, at the rate of $25 per hydrant, amounting to $2562.50, together with interest thereon from the date when each semi-annual instalment of rent became due and payable.

The plaintiff's action is based upon a written contract between the Borough of Middletown, by its chief burgess, and president of the borough council (as authorized by resolution of said council bearing date Dec. 13, 1897) and the Middletown and Swatara Water Company. By this contract the water company agreed to supply the water necessary for the proper protection of the Borough of Middletown from fire during the continuance of the agreement. It agreed to keep in good repair and ready for service all fire-plugs in use by said borough, and in case any of said fire-plugs shall not be in good condition when required for extinguishing fires, the rental for said plug or plugs shall not be paid until such time "as said plug or plugs shall be reported to the borough council or proper officer thereof as being in good condition and ready for service." The borough agreed to pay for said service the sum of $25 per annum for the use of each and every plug then in position, and also for any additional plugs that by direction of the said borough "may hereafter be placed, in two semi-annual payments on the first days of June and December of each year during the continuance of said contract." It was further agreed that the borough would have the right to designate some suitable person as its representative to be in attendance at the pumping station of the water company during the time of a fire "*to see that the proper service pressure is promptly put on and maintained during the time it may be required for the extinguishing of said fire.*" It was further understood and mutually agreed

that this contract should commence and be in full force and effect from June 1, 1897, and continue thereafter until either or both of the parties thereto should give a written notice of three months to the other party of its desire to terminate said agreement.

It appears from the pleadings that the plaintiff company was formed by the consolidation and merger of the Middletown and Swatara Water Company and the Londonderry Water Company on Oct. 30, 1903, and under the articles of consolidation and merger the plaintiff, *inter alia*, became possessed of all the rights, franchises, grants, privileges and contracts of the said Middletown and Swatara Water Company, as likewise all duties and services thereof resting upon the said Middletown and Swatara Water Company.

The defendant was not bound to file an affidavit of defence to plaintiff's action (Act of May 3, 1917, P. L. 149), but volunteered to do so, alleging therein, *inter alia*, certain proceedings had between the parties plaintiff and defendant hereto before the Public Service Commission of the Commonwealth of Pennsylvania. The affidavit of defence admits the number of water-plugs as set forth in plaintiff's statement, and the correctness of the calculation as to the annual rental, but denies that any such sums are due, and avers that defendant is under no obligation to pay the said sums. In so far as the affidavit of defence denies liability, we think it is insufficient in law, and if there was nothing further in the case—if the defendant was not excused from filing an affidavit of defence by the Act of 1917, and if a motion had been made for judgment for want of a sufficient affidavit of defence—we think we would have been compelled to enter judgment in favor of the plaintiff; but as the defendant is a mere volunteer in filing said affidavit, this case must be submitted to a jury for its determination.

The defendant further, by way of set-off and counter-claim, avers that the plaintiff failed to file with the Public Service Commission of the Commonwealth of Pennsylvania any tariff or schedule showing the prices, charge, rate or other compensation asked, demanded or received for the service of furnishing water for fire protection, as required by the Public Service Commission Law of July 26, 1913, P. L. 1374, which became effective Jan. 1, 1914; that the defendant did not know that plaintiff had not filed with the commission tariffs or schedules showing certain prices charged, etc., until after July 1, 1918; that it made payments of the water rent due for said fire protection during the years 1914, 1915, 1916, 1917 and 1918, amounting to the sum of $5012; that the plaintiff had no right to collect these sums, having failed to comply with the Public Service Commission law, and that, therefore, the defendant is entitled to recover from the plaintiff these payments thus made, with interest thereon from the day that they were wrongfully and unlawfully demanded and paid, and, therefore, the defendant is not indebted to the plaintiff in any sum whatsoever, and "there is due and owing to the defendant from the plaintiff the said sum, with interest," for which sum the defendant asks judgment against the plaintiff.

It is further alleged in the 2nd section of said affidavit of defence, paragraph *(g)*, that the plaintiff did not at any time from Jan. 1, 1914, supply the water necessary for the proper protection of the Borough of Middletown from fire.

To the set-off claimed by the defendant in its affidavit of defence the plaintiff filed its reply under oath, setting forth "without admission that the items contained in paragraph *(j)* of division II constitutes such set-off or counter-claim in law as intended by the statute, the plaintiff says that it is not indebted to the defendant in the sum of the said items of alleged set-off or

3 D. & C.

counter-claim, nor any part or item thereof, for the following reasons, to wit:

"(a) Because the said amounts, when paid, constituted the true, just and accurate amount of money the defendant owed the plaintiff at such respective times named, and paid the same upon bill rendered in the usual course of delivery between the plaintiff and defendant in the performance of the contract between them and for water furnished as provided under said contract.

"(b) Because no action of assumpsit would lie in law for said items or any of them, nor would any verdict be sustained thereon in law or judgment be entered thereon, nor could any independent action be supported for or on the facts alleged as to said items."

Section 15 of the Practice Act of May 14, 1915, P. L. 483, provides: "The set-off or counter-claim shall be regarded as the defendant's statement of claim, and the plaintiff's reply as an affidavit of defence thereto." Section 20 of said act provides: "The defendant, in the affidavit of defence, may raise any question of law without answering the averments of fact in the statement of claim; and any question of law so raised may be set down for hearing and disposed of by the court." We think, therefore, that the plaintiff was within its rights, under the Practice Act, when it filed a reply to that part of the affidavit of defence claiming a set-off or counter-claim raising a question of law, without answering the averments of fact set forth in the defendant's set-off or counter-claim.

In the brief of plaintiff's counsel, and also in the oral argument, our attention was directed to section 14 of the Practice Act, which provides: "In actions of assumpsit, a defendant may set off or set up by way of counter-claim against the claim of the plaintiff any right or claim for which an action of assumpsit would lie, and a verdict may be rendered in his favor for the amount found to be due, and judgment entered thereon." Counsel for plaintiff has proceeded, with great learning, to review the history of the statutes of defalcation, beginning with the "Great Law," passed at Chester in 1682, and ending with our Pennsylvania Defalcation Act of Jan. 12, 1705, 1 Sm. Laws (1706), 49, and reached the conclusion that, under the pleadings in this case, the "defendant's claim could not be set up as a set-off or counter-claim; but, arising out of the transaction involved in the plaintiff's cause of action, or on the contract on which it is founded, and on no independent or unconnected matter," the claim or demand of the defendant "must be administered as a defence, and not as a payment, by the court upon an equitable defence, if one, in law or equity." In support of this contention, defendant relies upon many cases, but principally on the case of Halfpenny v. Bell, 82 Pa. 128, 130, where Mr. Justice Paxson said: "Matters growing out of the same transaction, as a general rule, are the subjects of an equitable defence; our Defalcation Act allows other and totally distinct transactions to be proved by way of set-off, in order to avoid circuity of action."

This conclusion of the plaintiff's counsel appears to overlook the ruling of the Supreme Court in Hibert v. Lang, 165 Pa. 439, in which it was held: "In general, in order to support a set-off, there must be cross-demands between the same parties and in the same rights, such as would sustain mutual actions against each other; yet, wherever there is the practicability of avoiding circuity of action and needless costs with safety and convenience to all parties, or where there is a special equity to be subserved, and no superior equity of third parties will be injured, a set-off will be allowed upon equitable principles, though the case does not come within the language of the statute." Writing the opinion of the Supreme Court—see page 441—it was said by Mr. Justice Mitchell: "The foundation of set-off is the prevention

of circuity of action. It is, therefore, the general rule that the cross-demands must be held by the same persons and in the same rights, so that actions may be maintained thereon each against the other. But the whole doctrine is founded on equitable principles. It has frequently been held that our Defalcation Act is much broader than the English statutes, and it was said by Chief Justice Gibson, in Frantz v. Brown, 1 P. & W. 257, that 'set-off was originally nothing more than an equitable defence which the legislature has thought fit, in plain and simple cases, to subject to the jurisdiction of the courts of common law, reserving to chancery its original jurisdiction of cross-demands which do not fall within the statute. . . . The courts would be competent to do complete justice without the statute, as is shown by their having frequently gone beyond it.' "

Hibert v. Lang was decided in 1895, before the passage of the Practice Act of 1915, but it was quoted as authority by Judge Kephart in an opinion filed July 18, 1916, 54 Pa. Superior Ct. 376; also in a *per curiam* opinion filed Jan. 18, 1916, in Westinghouse E. Manuf. Co. v. Wilson, 63 Pa. Superior Ct. 294.

Discussing this same question in York City v. Miller, 60 Pa. Superior Ct. 407, it was said by Trexler, J.—see page 414: "The municipal claim being *in rem* and the counter-claim being personal, it might be argued that, under the Defalcation Act, the one could not be set off against the other, but the rule has been relaxed:" Hibert v. Lang, 165 Pa. 439.

It was held in the case from which we have just quoted that in a suit by a use-plaintiff to enforce a municipal lien for paving, the defendant may set off money which the use-plaintiff owed him for stone purchased and delivered.

In Hunter v. Henning, 259 Pa. 347, it was held: "A cardinal rule in the interpretation of statutes of set-off requires that there be mutuality of demand, both as regards the quality of the right and identity of the party. By mutuality in quality of right is to be understood mutuality of right with respect to the legal remedy provided for the enforcement of the several demands."

It was held in this case that in a suit by the receiver of a bank against the maker of promissory notes held by the bank, the defendant cannot set off against the plaintiff's demand bank deposits made by him in a fiduciary capacity prior to the insolvency of the bank, since to permit such a set-off would allow the defendant to pay his own debts with money belonging to others. There was, therefore, no mutuality of demand. Mr. Justice Stewart, writing the opinion of the Supreme Court, referred with approval to Hibert v. Lang, 165 Pa. 439.

In Mintz v. Tri-County Natural Gas Co., 259 Pa. 477, Mr. Justice Moschzisker said—see page 482: "Since the defendant cannot maintain a suit against the present plaintiff alone for the breach of contract which it contends it has a right to take advantage of in this action, it follows that the defendant is not in a position to use this alleged breach in defence as a set-off, for the rule requiring mutuality of debts, where set-off is pleaded, forbids the setting off of a joint debt against a separate one. . . . 'Mutuality of debts is the essential circumstance in set-off.' "

The learned justice also refers, on the general subject, to Hibert v. Lang, 165 Pa. 439. The two opinions last quoted were written in 1918.

In Marshall v. Brainerd, 253 Pa. 35, it was held, in an action by a corporation against the surety on the official bond of its treasurer to recover the amount of a misappropriation by the treasurer of moneys belonging to the corporation, the surety cannot set off the amount of a debt owing to him by

the obligee, arising from an independent transaction; nor can the treasurer, who is joined as a party defendant, set off moneys alleged to be due him by the company as against his liability for misappropriated treasury moneys. Hibert *v.* Lang is cited with approval by Judge Broomall, writing the opinion of the court below, which was affirmed by the Supreme Court, March 13, 1916. The set-off in this case was not allowed because the effect of allowing it would be to enable the treasurer to pay the moneys of the company, which he had received as its treasurer, by a debt of the company to his surety. This the treasurer could not do. The lack of mutuality in that case is very apparent.

In the case at bar there does not appear to be any lack of mutuality. The parties are the same. The claim in the affidavit of defence is that money was paid to the plaintiff which it had no right to receive, and which, in equity and good conscience, it ought not to retain, and, therefore, the defendant is entitled to recover it back. An action of *assumpsit* is the proper remedy for the recovery of money paid by mistake: Investors' Realty Co. *v.* City of Harrisburg, 24 Dauphin Co. Reps. 257. We do not pass upon the validity of defendant's claim for set-off at this time; whether it can be made out by competent evidence will have to be determined at the trial of this case.

Defendant's counsel directs our attention to article III, § 7, of the Public Service Commission Act of July 26, 1913, P. L. 1374, 1393, wherein it is enacted that: "It shall be unlawful for any public service company, after Jan. 1, 1914, to render or furnish, or to offer to render or furnish, within this Commonwealth, any service of the kind or character rendered or furnished by it until it shall have filed and posted its tariff and schedules in accordance with the provisions of paragraph *(d)* of section 1 of article II." It is alleged in the affidavit of defence that the plaintiff failed to comply with the provisions of the Act of 1913, requiring public service companies to file with the Public Service Commission of the Commonwealth of Pennsylvania its tariff and schedules in accordance with the provisions of the law from which we have just quoted, and that the defendant did not know that the plaintiff had so failed until after July 1, 1918; that it paid the rents provided in the contract in the belief that the plaintiff had complied with said law, and, therefore, it is now entitled to recover from the plaintiff the amounts so paid. Whether this contention is sound, we do not now decide. We think this case must go to a jury for its final determination; but we suggest that our attention has not been directed to any authority which holds, in a case such as this, that the defendant may recover back the money paid to the plaintiff because the plaintiff failed to comply with the law requiring it to file and post schedules of its rates, as required by the said Act of 1913. We do not decide this question now, and will not do so until all the facts are before us at the trial of this case.

We are not called upon to decide the other question of law raised in plaintiff's reply relating to paragraph *(g)* of the 2nd section of the affidavit of defence, which provides that the plaintiff did not at any time from Jan. 1, 1914, supply the water necessary for the proper protection of the Borough of Middletown from fire. This paragraph of the affidavit of defence does not raise any question of set-off or counter-claim.

Section 2 of the Practice Act of 1915 provides: "The pleadings shall consist of the plaintiff's statement of claim, defendant's affidavit of defence, and, where a set-off or counter-claim is pleaded, the plaintiff's reply thereto. When the affidavit of defence, or, where a set-off or counter-claim is pleaded, the plaintiff's reply thereto, is filed, the pleadings shall be closed and the case shall be deemed at issue, and no replication or formal joinder of issue shall be

Middletown and Swatara Consolidated Water Co. *v.* Middletown Borough.

required." The plaintiff's reply is only allowable when the defendant in his affidavit of defence sets up a set-off or counter-claim against the plaintiff. It is not permissible, therefore, for the plaintiff in its reply to raise a question of law upon any part of the pleadings except that part of the affidavit of defence of the defendant which alleges a set-off or counter-claim. As to all other matters of denial, the pleadings are at an end when the plaintiff's statement and the affidavit of defence thereto are filed.

We, think, therefore, that the question of law raised by the plaintiff in its reply must be decided against the plaintiff, and it is so ordered. Plaintiff may file a supplemental reply in answer to the averments of fact in the affidavit of defence which set up a set-off or counter-claim to the plaintiff's statement within fifteen days.

From William Jenkins Wilcox, Harrisburg, Pa.